Lundberg Stratton, J.
{¶ 1} Today this court must examine the following issue: When parties to a tort claim have executed a settlement agreement and consent judgment entry, may one party subsequently institute a separate cause of action for fraud in the inducement of the settlement agreement without seeking relief from the consent judgment and rescinding the settlement agreement? We answer in the negative and, therefore, reverse the judgment of the court of appeals.
Facts
{¶ 2} In 2000, Robert and Diane Berry, plaintiffs-appellees, filed a legal malpractice action against Javitch, Block & Rathbone, L.L.P., defendant-appellant (“Javitch”). One of the Berrys’ interrogatories in that case requested “the name of insurer, type of policy/policies, policy number/numbers, and limits of coverage of each and every insurance policy that may cover your alleged liability in this action, including umbrella coverage.”
{¶ 3} Javitch responded:
{¶ 4} “Legion Insurance Company
{¶ 5} “Claims made policy 10-12-99 through 10-12-00
{¶ 6} “Policy No. PL 106-572-42
{¶ 7} “Limits: $1 million per claim/$3 million aggregate”
{¶ 8} A few months later, Javitch supplemented its response to the Berrys’ interrogatory, amending its answer to state as follows: “Since providing our *481 original answer to this Interrogatory we have been advised by representatives of Legion Insurance Company that there is no coverage for plaintiffs’ claim.”
{¶ 9} On December 21, 2001, Javitch and the Berrys negotiated a settlement agreement in which Javitch consented to judgment in the amount of $195,000, with Javitch paying $65,000 by February 2002. The Berrys, who were represented by counsel, were to dismiss with prejudice all of their claims against the individual attorneys in the lawsuit and provide a full release of all claims against them. The dismissal was to be held and not filed until Javitch completed the installment payments totaling $65,000 or until a settlement was agreed to with Legion Insurance for settlement of this case, or at such earlier time as the parties may agree. In addition, Javitch was to prepare the dismissal with prejudice of the counterclaim they had asserted against the Berrys. The dismissal was to be held and not filed with the court until the Berrys filed their notice of dismissal of their claims against Javitch.
{¶ 10} Following execution of the agreement, Javitch was to attempt to persuade Legion to satisfy the $195,000 judgment. After 90 days, if Javitch was unsuccessful, the Berrys were permitted to attempt to collect the $130,000 balance ($195,000 judgment, less $65,000 paid by Javitch) from Legion. The agreement stated that “under no circumstances will Javitch * * * pay Plaintiffs under this agreement or under any judgment on the subject claim more than a total of $65,000.” Javitch was unable to persuade Legion to pay the balance of the settlement, and the parties executed and filed the consent judgment on April 1, 2002. The Berrys were also unsuccessful in their attempt to collect from Legion.
{¶ 11} In 2006, the Berrys filed the current action against Javitch, alleging fraudulent misrepresentation, fraudulent concealment, gross negligent misrepresentation, and gross negligent concealment. The Berrys’ claims stemmed from their allegation that Javitch did not disclose a claims-made policy from Clarendon National Insurance Company (“Clarendon”) in effect from October 12, 1998, to October 12, 1999. The time for reporting a claim under the Clarendon policy expired October 22, 1999. The Berrys alleged that the first time that they became aware of the Clarendon policy was in July 2004. The Berrys alleged that Javiteh’s interrogatory responses (in which it failed to identify the Clarendon policy) were knowingly false and/or incomplete and were made intentionally to mislead the Berrys and that the Berrys ultimately had relied on those responses to their detriment by entering into the settlement agreement.
{¶ 12} Javitch filed a motion for summary judgment, arguing that the Berrys’ claims were barred by the one-year limitations period for relief from judgment set forth in Civ.R. 60(B)(3), that the Berrys could not elect to affirm the settlement agreement and consent judgment and then separately sue for fraud, *482 and that the Berrys could not establish the requisite elements of their claims. Javitch alleged that it had not disclosed the Clarendon policy, because by the policy’s express language, the time for reporting a claim expired October 22, 1999, and no claim had been made during the effective dates of the policy. Because the time for reporting claims to trigger the Clarendon policy had long since expired, even if Javitch had identified the policy in its answers to the interrogatory and the Berrys’ counsel had immediately used that information, Javitch alleged that Clarendon would have owed neither coverage nor an indemnity obligation to Javitch or the Berrys. The trial court granted Javitch’s summary judgment motion without opinion.
{¶ 13} On appeal, the Court of Appeals for Cuyahoga County, relying on Frederickson v. Nye (1924), 110 Ohio St. 459, 144 N.E. 299, reversed the judgment of the trial court and remanded the cause for further proceedings, finding that Civ.R. 60(B)(3) does not apply, because the Berrys could and did choose to bring a separate action for fraud without rescinding the settlement agreement and seeking relief from the consent judgment entry. The court also held that a material issue of fact remains as to whether Javitch purposefully withheld the existence of the Clarendon policy.
{¶ 14} The cause is now before this court pursuant to the acceptance of a discretionary appeal.
Law and Analysis
{¶ 15} The parties executed a settlement agreement in 2001 that stated:
{¶ 16} “Plaintiffs will not release Javitch * * * with respect to the amount of the consent judgment, until such time as that judgment is satisfied by Legion Insurance Company or the claim against Legion Insurance Company for that judgment is otherwise resolved. The release will include, inter alia, an acknowledgement that the settlement constitutes a resolution of disputed claims.”
{¶ 17} In spite of the language of the settlement agreement, the court of appeals concluded that the Berrys could choose to bring a separate action for fraud without moving for relief from the consent judgment entry, holding that Civ.R. 60(B)(3) does not apply, because the Berrys were not looking to rescind the settlement agreement, but rather were suing for damages caused by Javitch’s alleged fraud. On appeal, Javitch argues that the Berrys failed to timely allege fraud pursuant to the one-year limitations period set forth in Civ.R. 60(B)(3). We agree with Javitch.

Release

{¶ 18} The parties disagree as to whether there was a valid release in this case. The Berrys argue that they did not release Javitch, because the entire settlement *483 amount of $195,000 was never paid. Javitch argues that the Berrys did knowingly and voluntarily release Javitch because the Berrys, while represented by counsel, entered into the settlement agreement when they knew that Legion was denying coverage. Moreover, the Berrys had opposed Javitch’s attempts to obtain a stay of the lawsuit so that it could get a declaration from Legion concerning coverage. The Berrys, apparently under advisement of counsel, believed a settlement to be in their best interest. Javitch argues that the claim against Legion Insurance Company was “otherwise resolved,” which under the terms of the settlement agreement should have triggered the Berrys’ release of Javitch, and that by signing the settlement agreement, the Berrys acknowledged and agreed at paragraph 11 of the agreement: “It is expressly understood that under no circumstances will Javitch * * * pay Plaintiffs under this agreement or under any judgment on the subject claim more than a total of $65,000, plus penalties and attorneys’ fees, as set forth in paragraph 10.”
{¶ 19} While there is no evidence that the Berrys executed a release of Javitch, the parties entered into a valid settlement agreement. Both parties performed as promised in the agreement. As required, Javitch paid $65,000 to the Berrys and attempted to persuade its insurance carrier to provide coverage for the full $195,000 consent judgment. When Legion denied coverage, the Berrys pursued a claim against both Legion and Clarendon. Both claims were denied. Although Legion did not satisfy the remainder of the consent judgment, the claim against Legion Insurance Company for that judgment was “otherwise resolved.” Finally, the trial court dismissed the case pursuant to the agreement, thereby dismissing all claims and counterclaims of the parties.
{¶ 20} The parties performed all conditions of the settlement agreement, except that the Berrys did not provide a full release of all claims as required by the settlement agreement once all the terms and considerations had been met. Instead, the Berrys chose to pursue this action against Javitch, ironically now claiming that there was no valid release. However, we conclude that the parties’ actions and fulfillment of the settlement agreement constituted a release of all claims.

Action for Fraud in the Inducement

{¶ 21} This court has long held that an action for fraud in the inducement of a settlement of a tort claim is prohibited unless the plaintiff tenders back the consideration received and rescinds the release. However, the court of appeals arrived at a different result, relying on Frederickson v. Nye, 110 Ohio St. 459, 144 N.E. 299, wherein we addressed the issue of election of remedies and held: “Where the remedies afforded are inconsistent, it is the election of one that bars the other; where they are consistent, it is the satisfaction which operates as a bar. It is the inconsistency of the demands that makes the election of one *484 remedial right an estoppel against the assertion of the other, and not the fact that the forms of action are different.” Id. at 466, 144 N.E. 299. Citing Frederick-son, the court of appeals concluded that the limitation in Civ.R. 60(B) requiring relief to be sought within one year was inapplicable, and it held that a material issue of fact still remained as to whether Javitch purposefully withheld the existence of the Clarendon policy.
{¶ 22} We disagree with the court of appeals’ determination that Frederickson applies to these facts. For the doctrine of election of remedies to apply, at least two remedies must exist at the same time. In this case, however, the remedies do not exist at the same time. In order for one remedy to exist, i.e., the separate action for fraud, the plaintiffs must rescind the other remedy, i.e., the settlement agreement.
{¶ 23} In reversing the judgment of the trial court, the court of appeals ignored a long line of contrary precedent. In Picklesimer v. Baltimore & O.R. Co. (1949), 151 Ohio St. 1, 38 O.O. 477, 84 N.E.2d 214, we distinguished between a release that is void and one that is voidable: “In the settlement of a tort claim for damages arising from personal injuries, a release obtained by fraud in the factum is void, and the claimant may maintain a subsequent action without returning or tendering the consideration he received. In such a settlement a release obtained by fraud in the inducement is voidable, and a subsequent action may not be maintained by the claimant without returning or tendering the consideration he received. In such a settlement a misrepresentation as to the nature or extent of the injuries constitutes fraud in the inducement; and the fact that the claimant asks damages for such fraud does not relieve him of the obligation to return or tender the consideration he received.” (Emphasis added.) Id., paragraphs one, two, and three of the syllabus.
{¶ 24} We distinguished between a release that is void and one that is voidable, noting that an agreement is void when a party has been fraudulently prevented from knowing that he or she has signed a release or its contents, and is merely voidable when the party alleges fraud or misrepresentation as to the facts inducing the party to settle. Id. at 5, 38 O.O. 477, 84 N.E.2d 214. The Berrys do not argue that they were prevented from knowing that they signed a settlement agreement or from knowing the contents of the settlement agreement. Rather, the Berrys argue that Javitch fraudulently misrepresented facts to induce them to settle, making this a fraud in the inducement claim.
{¶ 25} In Shallenberger v. Motorists Mut. Ins. Co. (1958), 167 Ohio St. 494, 5 O.O.2d 173, 150 N.E.2d 295, we followed Picklesimer. The plaintiff in Shallenberger filed an action for fraud related to representations by the defendant that she alleged had induced her to sign a release of claims for personal injuries and *485 damage to personal property arising from an automobile accident. This court held:
{¶ 26} “[T]he releasor has merely agreed for a consideration not to enforce his tort claim.
{¶ 27} “To allow the releasor to recover more than anyone agreed to give for his tort claim, because the releasor was induced by fraud * * *, is to permit the releasor in effect to enforce part of the tort claim that he agreed for a consideration not to enforce. * * * If he desires to do that, he must set aside, not affirm, his agreement not to sue * * *.” Id. at 501-502, 5 O.O.2d 173, 150 N.E.2d 295, citing Picklesimer, 151 Ohio St. 1, 38 O.O. 477, 84 N.E.2d 214.
{¶ 28} Finally, in Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 552 N.E.2d 207, a case involving a claim of breach of contract of employment, we further reaffirmed the principles previously espoused in Picklesimer and Shallenberger: “A releasor may not attack the validity of a release for fraud in the inducement unless he first tenders back the consideration he received for making the release.” Haller, paragraph two of the syllabus.
{¶ 29} As the dissenting appellate judge in this case noted, when the Berrys settled with Javitch, they were keenly aware that Legion was denying coverage because the claim was outside the policy’s time frame. Nonetheless, the Berrys agreed to accept $65,000 from Javitch without the possibility of recovering the balance from Javitch if Legion continued to deny coverage. The dissenter argues that this “proves that the Berrys were eager to settle for whatever Javitch could provide, regardless of coverage from an insurance carrier.” Berry v. Javitch, Block & Rathbone, L.L.P., 182 Ohio App.3d 795, 2009-Ohio-3067, 915 N.E.2d 382, ¶ 32. We agree.
{¶ 30} Applying the doctrine of election of remedies from Frederickson in the context of this settlement agreement and consent judgment would permit the Berrys to enforce part of a tort claim that it accepted consideration not to enforce. See Shallenberger, 167 Ohio St. at 501, 5 O.O.2d 173, 150 N.E.2d 295. The Berrys cannot be permitted to retain the benefit of the settlement agreement and at the same time attack the validity of that agreement. The appellate court’s judgment not only ignores long-standing precedent of this court but also endangers the finality of judgments.
Conclusion
{¶ 31} Clearly, our long line of cases regarding the appropriate method for rescinding settlement agreements requires reversal in this case. The plaintiffs alleged fraud in the inducement, which, if true, would render the settlement agreement voidable and require the releasor to tender back the consideration paid before attacking the agreement. The appropriate method to seek relief was *486 through Civ.R. 60(B). Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.
Judgment reversed.
O’Donnell, Lanzinger, and Cupp, JJ., concur.
Pfeifer, J., concurs in judgment only.
Brown, C.J., and Froelich, J., dissent.
Jeffrey E. Froelich, J., of the Second Appellate District, sitting for O’Connor, J.